## JAMES MERRITT *v.* THE STATE.

1. ADULTERY — ACCOMPLICE TESTIMONY.— In the trial of a man for adultery the testimony of his paramour as a witness for the State is that of an accomplice, and, unless corroborated by evidence tending to connect him with the offense, will not support his conviction.

2. SAME.— See evidence *held* insufficient in a trial for adultery to corroborate the testimony of the defendant's paramour.

APPEAL from the District Court of Comanche. Tried below before the Hon. W. A. BLACKBURN.

Adultery with one Barbara Edwards, a sister-in-law of the appellant, was the offense of which he was charged and convicted. A fine of $225 was the punishment assessed against him.

Barbara Edwards, testifying for the State, said she was twenty years old, and on March 10, 1880, gave birth to a child of which the defendant was the father. During the months of April, May and June, 1879, he had sexual connection with her four times; twice in the last named month, and once in each of the others. On each occasion the connection took place in the night-time and at the house of witness's mother, and on a pallet in a room in which the witness's mother and also the defendant's wife were sleeping. A little brother of witness, seven or eight years old, slept with her on the pallet. Defendant had not had connection with her since June, 1879.

On cross-examination the witness said she did not consent to the connection, and that the defendant had carnal knowledge of her "by what you would call force." He put his hand over her mouth and held her. She did not cry out, because she could not. One day in the summer of 1879, when corn was about waist high, she hoed corn for Mr. Frost; they were alone in the field, and no one else was near. She stayed and slept for about two weeks at Mr. Sadbury's, when his wife was sick.

The only other witness in the case was Mrs. Victoria Dunn, formerly Edwards, who, testifying for the State, said that the witness Barbara was her youngest daughter. The defendant has been a married man for five or six years, his wife being the oldest daughter of witness. Witness was present at the marriage of her daughter to the defendant. During the year 1879 the defendant and his wife lived about half a mile from the house of witness, with whom her daughter Barbara was living. On March 10, 1880, Barbara gave birth to a child. Witness

knew nothing of her daughter's pregnancy until the preceding January. After she learned of it she saw the defendant, told him of Barbara's condition, and bemeaned and abused him. Defendant made light of witness and Barbara. He said that witness took the matter too much to heart, and told her to send her other son-in-law, Mr. Sadbury, or some other man, to talk to him. During April, May and June, 1869, the defendant and his wife stayed all night at witness's house as often as once or twice a week. He never stayed there all night except when his wife was with him, and he and his wife always slept together, or, at least, went to bed together. Defendant has never visited the house of witness since she informed him of Barbara's pregnancy. Previous to that they had always been friendly.

On her cross-examination the witness did not remember she accused the defendant of being the father of the child, or whether he denied it or not. Nor could she say whether she told him she was going to take Barbara before a magistrate and make her swear who the child's father was, and make the father support it. Neither could she state whether the defendant said the father of the child ought to support it. If she had made these statements at the former trial of the case, they were true. Defendant's counsel asked the witness if she stated that the defendant made light of the idea that he was the father of the child; to which she replied in the affirmative. Several young men were with Barbara during the year 1879; one of them brought her home on the 4th of July, of that year, from a distance of twenty-five miles. Another one came occasionally to witness's house. Mr. Sadbury, who was also a son-in-law of the witness, lived about a mile distant, and Barbara stayed at his house for about two weeks, when his wife was sick. In 1879 Mr. Sadbury and Mr. Frost cultivated land on the place of witness, and were frequently about her house. One

night in 1879, Sadbury brought his wife there, and slept in the same room with Barbara and the rest of the family. There was but one room in the house.

On re-examination, the counsel for the prosecution desired the witness to state whether the defendant made light of her and Barbara, or of the idea that he was the father of the child. The witness replied that it was of her and Barbara the defendant made light. Mr. Frost was a married man.

The defense introduced no evidence. This appeal is from a second conviction of the appellant. In 10 Texas Ct. App. 402, the case is reported on the former appeal.

No brief for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

WHITE, P. J. On the former appeal in this case, which was reversed, it was held that "in the trial of a man for adultery, the testimony of his paramour as a witness is that of an accomplice or *particeps criminis* (see P. C. art. 335), and will not support his conviction unless corroborated by evidence tending to connect him with the offense." 10 Texas Ct. App. 402.

On this appeal the question for our determination, and the only question necessary to be determined, is the sufficiency of the evidence upon which the second conviction rests. We have carefully compared the statement of facts now before us with that shown on the former appeal, and the striking point of difference between the two is not that the corroborating evidence here is stronger than before, but that the evidence as now exhibited only tends to strengthen appellant's case on the probabilities of guilt, in that (outside the evidence of the accomplice) it furnishes almost if not quite as strong circumstances against Mr. Sadbury, another brother-in-law, and also brings within the range of competitive suspicion as to

the paternity of the alleged offspring of the adulterous intercourse a new party, to wit, a certain Mr. Frost, a married man, with whom the prosecutrix had "hoed corn one day during the summer of 1879, when corn was about waist high, and they were alone in the field and no one was near."

We do not hesitate in saying again that in our opinion the corroborating evidence tending to connect the accused with the commission of the offense charged is insufficient to support the verdict and judgment; wherefore the judgment is reversed and the cause remanded.

*Reversed and remanded.*